## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), the Defense Health Agency (DHA), acting on behalf of the TRICARE Program; the Office of Personnel Management (OPM), which administers the Federal Employees Health Benefits Program (FEHBP); and the United States Department of Veteran Affairs (VA) (collectively, the "United States"), the State of Tennessee, acting through the Tennessee Attorney General's Office and on behalf of its Medicaid program known as TennCare ("Tennessee"), and Southeastern Retina Associates, P.C. ("SERA"), and Sid Greenwell ("Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. SERA is a group practice of board certified ophthalmologists with approximately twenty locations throughout East Tennessee and Southwest Virginia.

B. On January 29, 2015, Sid Greenwell filed a *qui tam* action in the United States District Court for the Eastern District of Tennessee captioned *United States ex rel. Sid Greenwell v. Southeastern Retina Associates, P.C.*, Case No. 3:15-CV-44, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), and the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-183(b) (the "Civil Action").

C. The United States and Tennessee contend that SERA submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"), the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 through Tennessee's program known as TennCare ("Medicaid"); the TRICARE Program, 10

U.S.C. §§ 1071-1110b ("TRICARE"); the FEHBP, 5 U.S.C. §§ 8901-8914; and the Department of Veterans Affairs, Veterans Health Administration, 38 U.S.C. Chapter 17.

D. The United States and Tennessee contend that they have certain civil claims against SERA arising from the submission of claims for Evaluation and Management ("E&M") services (1) billed in conjunction with a modifier 25 during the same visit as an intravitreal injection that were not significant and separately identifiable, and were not above and beyond the usual pre-operative work during the time period January 1, 2009 through September 30, 2013, and (2) using Current Procedural Terminology ("CPT") codes 92014, 99204, and 99214 that were false because they were billed using a higher level than appropriate during the time period January 1, 2010 through October 31, 2016. That conduct is referred to below as the "Covered Conduct."

E. This Settlement Agreement is neither an admission of liability by SERA nor a concession by the United States or Tennessee that their claims are not well founded.

F. Relator claims entitlement under 31 U.S.C. § 3730(d) and Tenn. Code Ann. § 71-5-183(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. SERA shall pay to the United States and the State of Tennessee the total sum of one million five-hundred thousand dollars ($1,500,000.00) ("Settlement Amount"), of which $750,000.00 is restitution, no later than ten days after the Effective Date of this Agreement by

electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Eastern District of Tennessee.

2. Pursuant to 31 U.S.C. § 3730(d) and Tenn. Code Ann. § 71-5-183(d), SERA shall pay Relator a total sum of eighty-nine thousand three hundred forty two dollars ($89,342.00) for the expenses, attorneys' fees, and costs incurred by Relator, no later than ten (10) days after the Effective Date of this Agreement by remitting a check to counsel for Relator, The Burkhalter Law Firm, P.C., at P.O. Box 2777 Knoxville, Tennessee, 37901. This payment fully satisfies any and all present and future claims by Relator, Relator's Counsel, The Burkhalter Law Firm, or any other law firm, attorney or other person that assisted Relator with any aspect of this Civil Action.

3. Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, and conditioned upon SERA's full payment of the Settlement Amount, the United States releases SERA, together with its current and former parent corporations, direct and indirect subsidiaries, brother and sister corporations, divisions, current or former non-individual corporate owners, and affiliates, and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, or the common law theories of payment by mistake, unjust enrichment, and fraud.

4. Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, and conditioned upon SERA's full payment of the Settlement Amount, Tennessee releases SERA, together with its current and former parent corporations, direct and indirect subsidiaries, brother and sister corporations, divisions, current or former non-individual corporate owners, and affiliates, and the corporate successors and assigns of any of them, from any civil or

administrative monetary claim Tennessee has for the Covered Conduct under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 to -185; or the common law theories of payment by mistake, unjust enrichment, and fraud. Tennessee does not have authority and does not intend to release SERA from any claims or actions which may be asserted by private payors or insurers, including those that are paid by TennCare on a capitated basis.

5. Subject to the exceptions in Paragraph 7 below, and conditioned upon SERA's full payment of the Settlement Amount set forth in Paragraph 1 and SERA's full payment of incurred costs, attorneys' fees, and expenses set forth in Paragraph 2, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases SERA, together with its current and former parent corporations, direct and indirect subsidiaries, brother and sister corporations, divisions, current or former corporate owners, and affiliates, and the corporate successors and assigns of any of them, from any civil monetary claim the Relator has or may have, whether known or unknown, on behalf of the United States or Tennessee for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, or the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 to -185.

6. In consideration of the obligations of SERA in this Agreement and the Corporate Integrity Agreement ("CIA"), entered into between OIG-HHS and SERA, and conditioned upon SERA's full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against SERA under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 7 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to

exclude SERA from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 7, below.

7. Notwithstanding the releases given in paragraphs 3, 4 and 6 of this Agreement, or any other term of this Agreement, the following claims of the United States and Tennessee are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

    d. Any liability to the United States or Tennessee (or their agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability of individuals.

    g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    h. Any liability for failure to deliver goods or services due;

    i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

8. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and Tenn. Code Ann. § 71-5-

183(c)(2)(B). In connection with this Agreement and the Civil Action, Relator and his heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the United States or Tennessee in the Civil Action in order to dismiss the Civil Action, nor any dismissal of the Civil Action, shall waive or otherwise affect the ability of the United States or Tennessee to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), or the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-183(d)(3) and 183(e), bar Relator from sharing in the proceeds of this Agreement. Moreover, the United States, Tennessee, and Relator and his/her heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act and Tennessee law on the issue of the share percentage, if any, that Relator should receive of any proceeds of the settlement of his claims, and that no agreements concerning Relator share have been reached to date. The United States and Tennessee do not contest that Relator is entitled to a share percentage in the proceeds of the Settlement Agreement as set forth in Paragraph 1.

9. Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases SERA, and its officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, except under 31 U.S.C. § 3730(d) and Tenn. Code Ann. § 71-5-183(d) for the agreed upon expenses, attorneys' fees, and costs set forth in Paragraph 2.

10. SERA waives and shall not assert any defenses SERA may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution or in Art. I, § 10 of the Tennessee Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution or in Art. I, § 16 of the Tennessee Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

11. SERA fully and finally releases the United States and Tennessee, and their respective agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that SERA has asserted, could have asserted, or may assert in the future against the United States or Tennessee, and their respective agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' and Tennessee's investigation and prosecution thereof.

12. SERA fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that SERA has asserted, could have asserted, or may assert in the future against the Relator, related to the filing of the Civil Action and the Relator's investigation and prosecution thereof.

13. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare or Medicaid contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), TRICARE, FEHBP carrier or payer, VA carrier or payer, TennCare contractor (e.g., TennCare Managed Care Contractor), or any state payer (collectively, "Payers"), related to the Covered Conduct; and SERA agrees not to resubmit to any Payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

14. SERA agrees to the following:

   a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of SERA, its present or former officers, directors, employees, shareholders, and agents in connection with:

   (1) the matters covered by this Agreement;

(2) the United States' or Tennessee's audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) SERA's investigation, defense, and corrective actions undertaken in response to the United States' or Tennessee's audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement;

(5) the payment SERA makes to the United States and Tennessee pursuant to this Agreement and any payments that SERA makes to Relator, including costs and attorney's fees; and

(6) the negotiation of, and fulfillment of obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS,

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in paragraph 14.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to SERA.

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by SERA, and SERA shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost

SERA Settlement Agreement                                                                                                  Page 8 of 13

Case 3:15-cv-00044-PLR-HBG   Document 76-1   Filed 01/27/20   Page 8 of 16   PageID #: 259

statement, information statement, or payment request submitted by SERA or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

      c.      <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: SERA further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information statements, or payment requests already submitted by SERA or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information statements, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. SERA agrees that the United States, at a minimum, shall be entitled to recoup from SERA any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information statements, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States and Tennessee reserve their rights to disagree with any calculations submitted by SERA or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on SERA or any of its subsidiaries or affiliates' cost reports, cost statements, or information statements.

      d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States or Tennessee to audit, examine, or re-examine SERA's books and records to

determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

15. SERA agrees to cooperate fully and truthfully with the United States' and Tennessee's investigation of individuals and entities not released in this Agreement. Upon reasonable notice, SERA shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. SERA further agrees to furnish to the United States and Tennessee, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

16. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 17 (waiver for beneficiaries paragraph), below.

17. SERA agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

18. Upon receipt of the payments described in Paragraphs 1 and 2, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action with prejudice as to the Covered Conduct pursuant to Federal Rule of Civil Procedure 41(a)(1).

19. Subject to the exception in paragraph 9 above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

21. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Tennessee. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

23. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25. This Agreement is binding on SERA's successors, transferees, heirs, and assigns.

26. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

27. All parties consent to the United States, Tennessee and SERA's disclosure of this Agreement, and information about this Agreement, to the public.

28. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 1-17-2020    BY: *(signature)*
JESSICA R. SIEVERT
Special Assistant United States Attorney
Eastern District of Tennessee

DATED: 12/27/19    BY: *(signature)*
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: _____    BY: ~~LEIGH A. BRADLEY~~
~~General Counsel~~
~~Defense Health Agency~~
~~United States Department of Defense~~

DATED: _____    BY: _____
EDWARD M. DEHARDE
Assistant Director of Federal Employee
Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management

## THE STATE OF TENNESSEE

DATED: _____    BY: _____
HERBERT H. SLATERY III
Tennessee Attorney General and Reporter

## THE UNITED STATES OF AMERICA

DATED: _____ BY: _____
JESSICA R. SIEVERT
Special Assistant United States Attorney
Eastern District of Tennessee


DATED: _____ BY: _____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


DATED: _____ BY: _____
LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense


DATED: 12/23/2019 BY: _____
EDWARD M. DEHARDE
Assistant Director of Federal Employee
Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management


## THE STATE OF TENNESSEE

DATED: _____ BY: _____
HERBERT H. SLATERY III
Tennessee Attorney General and Reporter

## THE UNITED STATES OF AMERICA

DATED: _____ BY: _____
JESSICA R. SIEVERT
Special Assistant United States Attorney
Eastern District of Tennessee


DATED: _____ BY: _____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


DATED: _____ BY: _____
LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense


DATED: _____ BY: _____
EDWARD M. DEHARDE
Assistant Director of Federal Employee
Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management


## THE STATE OF TENNESSEE

DATED: *Jan. 14, 2020* BY: *Herbert H. Slatery III*
HERBERT H. SLATERY III
Tennessee Attorney General and Reporter

## SOUTHEASTERN RETINA ASSOCIATES, P.C. - DEFENDANT

DATED: 12/23/2019    BY: _____
                         ANDREW M. LAVERGHETTA
                         Chief Executive Officer
                         On Behalf of SERA

DATED: 12/23/2019    BY: _____
                         ALLISON W. SHUREN
                         Arnold & Porter
                         Counsel for SERA

## SID GREENWELL - RELATOR

DATED: _____    BY: _____
                        SID GREENWELL
                        Relator

DATED: _____    BY: _____
                        D. ALEXANDER BURKHALTER
                        Counsel for Sid Greenwell

## SOUTHEASTERN RETINA ASSOCIATES, P.C. - DEFENDANT

DATED: _____ BY: _____
ANDREW M. LAVERGHETTA
Chief Executive Officer
On Behalf of SERA

DATED: _____ BY: _____
ALLISON W. SHUREN
Arnold & Porter
Counsel for SERA

## SID GREENWELL - RELATOR

DATED: 1-7-2020 BY: *[signature]*
SID GREENWELL
Relator

DATED: 1/7/2020 BY: *[signature]*
D. ALEXANDER BURKHALTER
Counsel for Sid Greenwell